UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-369-F

| | | |
|---|---|---|
| JOAN D. PULS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| SUNTRUST MORTGAGE, INC. d/b/a | ) | |
| BANCFINANCIAL, | ) | |
| | ) | |
| Appellee. | ) | |

This matter is before the court on appeal from the December 31, 2007 and April 22, 2008

orders of the United States Bankruptcy Court for the Eastern District of North Carolina.  For the

reasons discussed below, the court affirms the decisions of the Bankruptcy Court granting

summary judgment to Appellee SunTrust Mortgage, Inc. ("SunTrust"), denying summary

judgment to Appellant Joan D. Puls ("Puls"), and denying Pul's motion for a new trial or to alter

or amend judgment.

## I.  PROCEDURAL AND FACTUAL HISTORY

This matter stems from SunTrust's February 2007 action in the Superior Court of

Brunswick County, North Carolina, against Cathy Allen Gunter and Puls to quiet title to real

property located in Brunswick County.  Gunter was the record owner of the property at that time,

and she filed a petition for relief under chapter 7 of the Bankruptcy Code soon after SunTrust

filed the action to quiet title.  As such, the action was removed to this court, and then transferred

to the Bankruptcy Court as an adversary proceeding in Gunter's chapter 7 proceeding.

The real property at the center of this action is located at 41 Richmond Street, Ocean Isle

Beach, North Carolina ("the Property" or "the Richmond Street property").  Gunter acquired title

to the Property by virtue of a general warranty deed from L.M. Branch a/k/a Larry M. Branch

a/k/a Larry "Will" Moore Branch ("Branch").  The Deed was dated August 16, 2005 and

recorded August 17, 2005 in Book 2216, Page 62 of the Brunswick County Public Registry.  In

connection with Gunter's purchase of the Property, on or about August 16, 2005, Gunter

borrowed the sum of $600,000.00 from SunTrust (the "Loan"), and the Loan was secured by a

deed of trust encumbering the Property.  The Deed of Trust was recorded on August 17, 2005, in

Book 2216, Page 65 of the Brunswick County Public Registry.

More than a year prior to the sale of the Property to Gunter, Puls initiated a civil action

against Branch and Britt Investments of NC, Ltd, before Clerk of Superior Court of Mecklenburg

County, Case No. 04-CVS-9399 ("Mecklenburg County Action") on May 24, 2004, seeking,

*inter alia*, a money judgment for breach of contract.  On November 10, 2004, in connection with

the Mecklenburg County Action, Puls caused the Clerk of the Superior Court for Mecklenburg

County Action to issue an Order of Attachment seeking to attach property of Branch in the

amount of $50,000.00 (the "Order of Attachment").

Upon issuance, the Order of Attachment was sent to the Brunswick County Sheriff's

Office to be served.  Sergeant Steven M. Trull of the Brunswick County Sheriff's Office, the

supervisor of the civil division, testified in state court that he had no specific memory of the

Order of Attachment, but he did testify about the routine or practice that the civil division

normally follows upon receipt of such orders.  Specifically, he testified that any civil process that

is sent to the Sheriff's Office goes to the civil clerk, who logs it into the civil division's computer

to show when it was received and the officer to which it is assigned.  The civil clerk will then

2

insert the paper in the assigned officer's box. He also testified that the assigned officer will make

service of the paper, and then the clerk notes in the computer who made service, how it was

made "and what happened with the paperwork from there." Transcript of Sgt. Trull [DE-2-20] at

p. 7-8. Sgt. Trull also testified that for Orders of Attachment regarding real property, he levies

on the property by signing the Order of Attachment. *Id.* at pp. 11-12. If the Order of Attachment

originates from another county, he then takes "it to the clerk's office for them to file or make a

copy of or file it whatever appropriate places they do so." *Id.* at p. 13. Sgt. Trull testified that his

actions with regard to Orders of Attachment are "routine." *Id.* at p. 14.

Sgt. Trull also testified about records that are kept in the ordinary course of business of

the Sheriff's Department; namely, the "Civil Paper" that is a computer print-out of the computer

records maintained by the Sheriff's Department with regard to each civil process that comes to

the Sheriff's Department. Sgt. Trull testified that according to the Sheriff's Office records, the

Order of Attachment was received by the civil division on November 16, 2004, and was assigned

to him. According to the records of the Sheriff's Office, Sergeant Trull "served" the Order of

Attachment on November 16, 2004, and "the levy" occurred on November 17, 2004. The

records also indicate that the Order of Attachment came with a self-addressed stamped envelope,

and it was "returned to the clerk or attorney, whichever the envelope was addressed for, [on]

November 19, 2004." *Id.* at p. 11. According to Puls, however, the endorsed Order of

Attachment was misplaced at some point. There is no dispute that the endorsed Order of

Attachment was not (1) properly noted on the Brunswick County judgment docket, (2) properly

indexed by the Brunswick County Clerk of Superior Court, or (3) docketed or indexed in

Mecklenburg County.

3

Regardless, on December 17, 2004, Puls filed a Notice of Issuance of Order of Attachment and Notice of Lis Pendens in Brunswick County which was docketed on the Brunswick County lis pendens docket and which described the real property at issue in this action.  On March 8, 2005, Branch filed a Motion to Quash Orders of Attachment and Cancel Notices of Lis Pendens on substantive grounds in the Mecklenburg County Action, which was denied by a July 14, 2005, Order by Judge Albert Diaz.  On August 16, 2005, Branch, as already described, transferred the real property to Gunter.

On October 18, 2006, Puls obtained a Judgment in the Mecklenburg County Action in the sum of $408,814.73, plus interest at the legal rate from and after October 18, 2006 ("the Judgment").  The Judgment was filed in Mecklenburg County on October 19, 2006, and was transcribed and docketed in Brunswick County on November 30, 2006.

On January 4, 2007, Puls caused the Clerk of Superior Court of Mecklenburg County to issue a Writ of Execution directing the Sheriff of Brunswick County to attempt to satisfy the Judgment.  Thereafter, on January 17, 2007, the Brunswick County Sheriff issued a Notice of Sale indicating that on February 19, 2007, at noon, all "title and interest of the defendant Larry 'Will' Moore Branch former owner of [the Property]" would be sold by the Sheriff at auction subject to all prior liens and interests (the "Execution Sale").  Ex. G to the Adv. Compl. [DE-1-5].

On February 9, 2007, SunTrust filed this action against Gunter and Puls in the Superior Court of Brunswick County seeking to quiet title to the Property and seeking to enjoin the sale of the Property.  On February 22, 2007, Gunter filed a petition for relief pursuant to chapter 7 of the Bankruptcy Code.  This action was removed to this court on April 10, 2007, and subsequently

4

transferred to the United States Bankruptcy Court for the Eastern District of North Carolina.

On April 30, 2007, Puls filed a Motion for Relief from Stay, arguing (1) the automatic stay should be lifted so the state court could adjudicate the quiet title action; (2) mandatory abstention was appropriate under 28 U.S.C. § 1334(c)(2); (3) permissive abstention was appropriate under 28 U.S.C. § 1334(c)(1), and (4) equitable remand pursuant to 28 U.S.C. § 1452 was appropriate. The Honorable A. Thomas Small, Bankruptcy Judge, denied the Motion for Relief from Stay on June 28, 2007, finding that the matter was a core proceeding, that the subject Property was property of the estate, and that the court could hear the matter expeditiously to determine the priority and validity of the claimed liens.

On October 26, 2007, Puls and SunTrust filed competing Motions for Summary Judgment, and on November 29, 2007, the chapter 7 Trustee filed a Notice of Abandonment with regard to the Property. Judge Small held a hearing on the Motions for Summary Judgment on December 13, 2007. By virtue of the practice in the Eastern District, the Property was deemed abandoned on December 17, 2007.

On December 21, 2007, after the Property was abandoned, Judge Small allowed SunTrust's Motion for Summary Judgment and denied Pul's Motion for Summary Judgment. . On December 31, 2007, Puls filed a Motion to Amend Order and a Notice of Appeal. In the Motion to Amend the Order, and in the hearing on the Motion held by Judge Small, Puls argued that the circumstances of the case had changed, and the abandonment of the Property by the Trustee divested the bankruptcy court of jurisdiction of the court and/or made remand or abstention proper. The Motion to Amend Order was denied by Judge Small on April 22, 2008. On May 21, 2008, an Order was entered consolidating the records of the base case and the

adversary case for appeal.[1] The record on appeal was transmitted to this court on July 30, 2008.

## II. ANALYSIS

Appellant Puls presents the following issues on appeal: (1) whether the Bankruptcy Court should have abstained from the proceeding; (2) whether the Bankruptcy Court erred in finding that the statutory requirements for levy were not met and that no judgment lien arose in Puls' favor from the Order of Attachment; (3) whether the Bankruptcy Court erred in not finding that Sun Trust's claims attacking the Order of Attachment were time-barred, or barred by the doctrines of waiver or laches; and (4) whether the Bankruptcy Court erred by failing to find that the Order of Attachment and Notice of Lis Pendens were effective to put Sun Trust on notice of the pendency of the Mecklenburg County Action and the Order of Attachment.

### A. Abstention/Jurisdiction

Puls argues that the Bankruptcy Court erred by failing to abstain from hearing the removed state court proceeding under 28 U.S.C. § 1334(c)(2), or, alternatively, 28 U.S.C. § 1334(c)(1). The parties' arguments implicate both the jurisdiction of this court and the standard of review this court should employ in this proceeding, and for that reason, the court will address the abstention arguments first.

By way of background, district courts have original, but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising in a case in title 11 (referred to as "core

---

[1] Judge Small declined to consolidate the actual appeals, because the consolidation is a matter to be determined by the district court. The court agrees with Judge Small's observation that the appeals include common issues of fact and law, and consolidation of the appeals would avoid significant duplication of effort and expense. Therefore, this court hereby CONSOLIDATES the appeals in the adversary proceeding with the appeal in the bankruptcy case.

proceedings") as well as civil proceedings "related to" cases under title 11 (referred to as "non-core proceedings"). 28 U.S.C. § 1334(a), (b); 28 U.S.C. § 157 (a), (b).  When this court sits as an appellate court over the Bankruptcy Court's decisions in "core proceedings," it applies a de novo standard of review to the legal conclusions, and this court reviews the underlying findings of fact for clear error. *Spence v. Educ. Credit Mgmt.*, 541 F.3d 538, 544 (4th Cir. 2008).  When this court reviews the Bankruptcy Court's decisions in non-core proceedings, it must undertake a de novo analysis of both the law and the factual findings to which the appellant objects. *In re Apex Exp. Corp.*, 190 F.3d 624, 630 (4th Cir. 1999).

For a case or claim to "arise under title 11" it must be "a cause of action created by the Bankruptcy Code, and which lacks existence outside the context of bankruptcy." *In re Kirkland*, 600 F.3d 310, 316 (4th Cir. 2010).  *See also Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)( "If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference.").  A proceeding " 'arising in' Title 11 is one that is "not based on any right expressly created by title 11, but nevertheless, would have no existence outside the bankruptcy. . . .[A] controversy 'arises in title 11' when it would have no practical existence *but for* the bankruptcy." *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 835-36 (4th Cir. 2007).  *See also Wood*, 825 F.2d at 97 ("If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt.").  A non-exhaustive list of "core" proceedings is set forth in 28 U.S.C. § 157(b)(2).  The list includes: (1) matters concerning the administration of the estate; (2) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests

for the purposes of confirming a plan under chapter 11; (3) determinations of the validity, extent, or priority of liens, and (4) other proceedings affecting the adjustment of the debtor-creditor relationship.

In contrast to core proceedings, a proceeding that is related to a case under title 11–in other words, "non-core"– is one where " 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. ' " *In re Celotex Corp.*, 124 F.3d 619, 625-26 (4th Cir. 1997)(quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)(emphasis removed). *See also Wood*, 825 F.2d at 97 ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* tot he bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise releated" or non-core proceeding.").

In assessing whether a proceeding is "core" or "non-core", a court must keep in mind the Supreme Court's decision in *Northern Pipeline Construction Company v. Marathon Pipe Line Company*, 458 U.S. 50 (1982). As the Fourth Circuit has explained, in *Northern Pipeline*:

> the Supreme Court struck down portions of the Bankruptcy Act of 1978 as violative of Article III of the Constitution. The chief basis for the plurality opinion was that the Bankruptcy Act of 1978 allowed non-article III courts (i.e., bankruptcy courts) to hear claims based upon state-created private rights that arose independent from and antecedent to the bankruptcy proceedings and involved strangers to the bankruptcy action. In the wake of the *Northern Pipeline*, Congress enacted the core/non-core distinction [set forth in 28 U.S.C. § 157(b)(2)] to try and remedy the defects in the bankruptcy system.

*In re Apex Exp. Corp.*, 190 F.3d at 631 (internal citations omitted). The distinction between "core" and "non-core" is "far from clear," and § 157(b)(2) "must be interpreted keeping in mind (1) that Congress passed it in response to the defects revealed by *Northern Pipeline*, and (2) that

8

*Northern Pipeline* remains good law." *Id.* Otherwise, "a broad reading of the literal terms of the statutory text could lead to the result that courts treat just about every dispute as 'core.' " *Id.* With this distinction between "core" and "non-core" proceedings in mind, the court turns to the parties' arguments regarding abstention.

### 1. Mandatory abstention

Puls argues that mandatory abstention under 28 U.S.C. § 1334(c)(2) is applicable to the case at bar. Section 1334 (c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to case under title 11 or arising in a case under title 11, with respect to which an action could have not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such a proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Thus, for mandatory abstention to apply, "the proceeding must '(1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding.' " *Barge v. Western S. Life Ins. Co.*, 307 B.R. 541, 546 (S.D.W.Va. 2004)(quoting *In re Dow Corning Corp.*, 113 F.3d 565, 570 (6th Cir. 1997)).

It is apparent that prior to the abandonment of the Richmond Street property, the adversary proceeding was a matter falling under 28 U.S.C. § 157(b)(2)(K): determination of the validity, extent, or priority of liens. *See, e.g., In re Toledo*, 170 F.3d 1340, 1347 (11th Cir. 1990)(explaining that 28 U.S.C. § 157(b)(2)(K) encompasses proceeding to determine the validity, extent or priority of liens on the estate's property). Mandatory abstention, therefore, was

9

unwarranted while the Richmond Street property remained in the estate.

Whether this matter remained a "core" proceeding after the Richmond Street property was abandoned, however, is a much closer question. There is a split in authority as to whether the liens referred to in 28 U.S.C. § 157(b)(2)(K) must relate *only* to the property of the estate or can also relate to the property of the estate *or* the debtor. *Veldeckens v. GE HFS Holdings, Inc.*, *(In re Doctors Hosp. 1997, L.P.)*, 351 B.R. 813, 844 (S.D. Tex. 2006)(recognizing "[t]here is a split of authority on whether the liens referred to in 28 U.S.C. § 157(b)(2)(K) must relate only to property of the estate or can also relate to either property of the estate *or* of the debtor" and collecting cases). Moreover, even if the adversary proceeding can conceivably fit within one of the other categories set forth in 28 U.S.C. § 157(b)(2), this court must keep in mind the Fourth Circuit's admonition that § 157(b)(2) must be interpreted while keeping in mind *Northern Pipeline*.

Therefore, the court will *assume*, for purposes of this proceeding, that once the Richmond Street property was abandoned, the proceeding no longer remained a "core" proceeding. Even assuming that the abandonment of the Richmond Street property caused the adversary proceeding to morph into a "non-core" proceeding, mandatory abstention remained inappropriate.[2] Under

---

[2] In addition to arguing that mandatory abstention is applicable, Puls appears to make contradictory statements regarding *jurisdiction* in her brief [DE-9] before this court. On page 20, Appellant asserts in a heading: "The Bankruptcy Court erred by failing to abstain (mandatory abstention) from hearing the removed state court proceeding under 28 U.S.C. § 1334(c)(2) because said proceeding is "related to" Gunter's bankruptcy case, but does not "arise under" Title 11 or "arise in" a case under Title 11." Later, Appellant argues that the adversary proceeding is not "related to" the bankruptcy case "because the outcome of that proceeding would not have an effect on the estate being administered in bankruptcy as [Debtor] intended to surrender the real property from the outset of her bankruptcy case and the Trustee ultimately abandoned the property." Appellant's Brief [DE-9] at p. 23.

Again, even assuming assuming that the abandonment of the Richmond Street property

the unique circumstances of this case, the court finds that the motion for mandatory abstention was not timely. *See* 28 U.S.C. § 1334(c)(2)(stating that one of the requirements for mandatory abstention is a timely motion by the party seeking the abstention). Puls had knowledge of the Notice of Trustee's Intent to Abandon Property prior to the Bankruptcy Court's December 13, 2007, hearing on the parties' motions for summary judgment, yet failed to indicate her belief that (1) the abandonment would deprive the Bankruptcy Court of jurisdiction or (2) mandatory abstention would be necessary upon the abandonment of the Richmond Street property. Counsel for Puls later told the Bankruptcy Court that he felt raising such arguments at the summary judgment hearing, prior to the Richmond Street property actually being abandoned, would be premature because someone could have filed an objection to the Notice of the Abandonment or the Trustee could have withdrawn the notice. *See* Transcript on Mot. for New Trial [DE-3-36] at pp. 17-18. However, given the property, by operation of law and the policies of this District, was likely to be deemed abandoned just four days after the hearing, the court is puzzled by Puls' failure to raise the issue. Indeed, Puls did not raise the issue immediately after the property was abandoned, but instead waited until *after* the Bankruptcy Court issued an adverse ruling to her. Puls' timing gives the appearance that she was less concerned with issues of comity and more

---

caused the adversary proceeding to morph into a "non-core" proceeding, neither the Bankruptcy Court nor this court were deprived of jurisdiction over the adversary proceeding, despite Puls' arguments to the contrary. The adversary proceeding plainly remained "related to" the main bankruptcy case. *See* 28 U.S.C. § 1334(b); *In re Celotex Corp.*, 124 F.3d at 625-26 ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*")(emphasis in original). That is, the adversary proceeding *conceivably* has an effect on the estate: it determines whether SunTrust is a secured creditor or the largest unsecured creditor.

11

concerned with getting a second bite at the apple in another forum. Again, under the unique circumstances of this case, this court cannot find Pul's motion to be timely.

### 2. Permissive abstention

In the alternative, Puls also contends that the Bankruptcy Court should have voluntarily abstained from hearing the adversary proceeding under 28 U.S.C. § 1334(c)(1). Under that section, a federal court may voluntarily abstain from hearing core and non-core proceedings "if the interests of justice" require or "in the interest of comity with State Court or respect for State law." Courts consider several factors when determining whether to voluntarily abstain from a proceeding, including: (1) the court's duty to resolve matters properly before it; (2) the predominance of state law issues and non-debtor parties; (3) the economical use of judicial resources; (4) the effect of remand on the administration of the bankruptcy estate; (5) the relatedness or remoteness of the action to the bankruptcy estate; (6) whether the case involves questions of law better addressed by the state court; (7) comity considerations; (8) any prejudice to the involuntarily removed parties; (9) forum non conveniens; (10) the possibility of inconsistent results; (11) any expertise of the court where the action originated; and (12) the existence of the right to a jury trial. *Sowell v. U.S. Bank Trust Nat'l Ass'n*, 317 B.R. 319, 323 (E.D.N.C. 2004)(adopting the test set forth in *Blanton v. IMN Fin. Corp.*, 260 B.R. 257, 265 (M.D.N.C. 2001)).

Whether this court considers the state of the proceeding when it was first removed and transferred to the jurisdiction of the Bankruptcy Court, or later when the trustee abandoned the subject property, this court is of the opinion that permissive abstention is not warranted in this case.

12

First, when the case was first removed to this court, and Puls moved the Bankruptcy
Court to remand or voluntarily abstain from the proceeding, neither the interests of justice nor the
interests of comity required either this court or the Bankruptcy Court to abstain. The three
reasons raised by Puls in favor of voluntary abstention were (1) the availability of a jury trial, (2)
the matters involved in the dispute involve only state law and (3) the case could be more
expediently addressed in state court. Puls' argument concerning a jury trial, however, does not
carry very much weight because she contends that the facts in the proceeding are not in dispute
and the matter can be resolved by a court, whether be federal or state, in its entirety without the
use of a jury. *See* Mot. to Modify Stay [DE- 3-8] ¶ 10. Moreover, the court does not find the
state law issues to be so novel as to overwhelm the equitable reasons for retaining jurisdiction:
the economical use of judicial resources and this court's duty to resolve matters properly before
it, including the priority and validity of liens of property belonging to the estate.

Second, the court does not perceive that the abandonment of the subject property, at the
late stage of the adversary proceedings, requires the voluntary abstention of this court. At this
late stage of the proceedings, the consideration of comity and judicial economy does not favor
Puls. Finally, even if this court assumes that the proceeding is no longer a "core" proceeding,
there remains a very real potential affect on the bankruptcy estate. It is undisputed that the
resolution of the adversary proceeding will result in SunTrust having either a fully secured claim
or being the largest unsecured creditor of the estate. In sum, the court finds that neither the
interests of justice nor the interests of comity require the court to abstain.

## B. Substantive Arguments

Having determined that it retains jurisdiction over this matter, and assuming this matter is

13

a non-core proceeding, the court now turns to its *de novo* review of the facts and conclusions of
law.

In this case, both parties contend there are no genuine issues of material fact.  The parties,
however, have a very different view of at least one determinative fact: whether a "levy," within
the meaning of the North Carolina General Statutes, occurred.  The parties, in turn, base a
majority of their arguments on their respective starting premises.  SunTrust, for its part argues,
*inter alia*, that Puls never obtained a valid lien, enforceable against third parties, by virtue of the
Order of Attachment in the Mecklenburg County because there is no evidence that a "levy,"
within the meaning of the North Carolina General Statutes, took place.  Puls, however, contends
that the evidence mandates a finding that a "levy" took place, and any defects in the levy process
amount to non-jurisdictional procedural defects which do not invalidate the Order of Attachment.
According to Puls, because there was a valid "levy," she has a lien that relates back to the filing
of the Notice of Issuance of Order of Attachment on the lis pendens docket in Brunswick County.
To put the parties' various arguments in context, it is first necessary to review the relevant
provisions of the North Carolina General Statutes.

### 1. North Carolina law on attachment and levy

North Carolina General Statute § 1-440.1 provides:

> Attachment is a proceeding ancillary to a pending principal action, is in the nature
> of a preliminary execution against property, and is intended to bring property of a
> defendant within the legal custody of the court in order that it may subsequently
> be applied to the satisfaction of any judgment for money which may be rendered
> against the defendant in the principal action.

"Under the statutory scheme, an attachment lien cannot be sought without an underlying lawsuit
and remains wholly dependent upon the lawsuit's success for conversion into an enforceable

14

judgment lien." *Ivester v. Miller*, 398 B.R. 408, 416 (M.D.N.C. 2008)(citing *Edwards v. Brown's Cabinets & Millwork, Inc.*, 63 N.C. App. 524, 528, 305 S.E. 2d 765, 786 (N.C. app. 1983)).

North Carolina General Statute § 1-440.15 provides for the method of execution of orders of attachment, and states, in pertinent part:

> The sheriff to whom the order of attachment is directed shall note thereon the date of its delivery to him and shall promptly execute it by levying on the defendant's property as follows:
>
> (1) The levy on real property shall be made as provided by G.S. 1-440.17.

N.C. Gen. Stat. § 1-440.15(1).  Section 1-440.17, in turn, provides:

> (a) **In order to make a levy on real property, the sheriff** need not go upon the land or take control over it, but he
>
> > (1) **Shall make an endorsement upon the order of attachment** or shall attach thereto a statement showing that he thereby levies upon the defendant's interest in the real property described in such endorsement or statement, describing the real property in sufficient detail to identify it clearly, and
> > (2) **Shall, as promptly as practicable, certify such levy**, and the names of the parties to the action, **to the clerk of the superior court of the county** in which the land lies.
>
> (b) **Upon receipt of the sheriff's certificate, the clerk shall docket the levy, as provided by G.S. 1-440.33.**

N.C. Gen. Stat. § 1-440.17 (emphasis added).  Thus, to "levy" on real property, the sheriff must make an endorsement AND certify the levy to the clerk of court.

Additionally, North Carolina General Statute § 1-440.33 provides when lien of attachment begin, and specifically provides:

> (b) When the clerk receives from the sheriff a certificate of levy on real property as provided by G.S. 1-440.17, the clerk shall promptly note the levy on his

15

judgment docket and index the same. **When the levy is thus docketed and indexed**,

> (1) **The lien attaches and relates back to the time of the filing of the notice of lis pendens if the plaintiff has prior to the levy caused notice of the issuance of the order of attachment to be properly entered on the lis pendens docket** of the county in which the land lies, as provided by subsection (a) of this section. (2) **The lien attaches only from the time of the docketing of the certificate of levy if no entry of the issuance of the order of attachment has been made prior to the levy** on the lis pendens docket of the county in which the land lies.

N.C. Gen. Stat. § 1-440.33(b)(emphasis added).

### 2. Application of North Carolina's statutory scheme

As this court has observed, both parties say there is no genuine issue of material fact, even as they clash over whether the evidence supports a finding that a "levy" within the meaning of § 1-440.17 occurred. This court is of the opinion that there is not a genuine issue of material fact, albeit for a different reason. This court finds that a factfinder *could* find–but would not be obligated to do so–that Sgt. Trull both endorsed the Order of Attachment and certified the levy to the clerk of court. Even if a fact-finder could find that Sgt. Trull *both* endorsed the Order of Attachment *and* certified the levy to the clerk of court, it does not change the following undisputed fact: the Clerk of Court for Brunswick County did not index or docket the certificate of levy.

Under the express terms of the North Carolina General Statutes, a lien attaches to property subject to an order of attachment when the clerk of court dockets and indexes the certificate of levy. N.C. Gen. Stat. § 1-440.33. If a notice of lis pendens previously has been filed, the lien relates back to the time of the filing of the lis pendens. N.C. Gen. Stat. § 1-

16

440.33(b)(1). If a notice of the issuance of an order of attachment has *not* been filed, then the lien attaches "only from the time of the docketing of the certificate of levy." N.C. Gen. Stat. § 1-440.33(b)(2). Thus, a lien *attaches* "[w]hen the levy is thus docketed and indexed." N.C. Gen. Stat. § 1-440.33(a). It follows from the plain language of the statute that if the levy is *not* docketed by a clerk of court, then a lien enforceable as to third parties *does not attach*. A lien arising by virtue of the Order of Attachment and subsequent levy, but no docketing and indexing of the levy, would attach, if at all, upon the entry of judgment. Without the indexing and docketing of a levy–as required by the North Carolina General Statutes for an attachment lien–the judgment lien has nothing to which it may relate back. *See, e.g., Voehringer v. Pollock*, 224 N.C. 409, 411, 30 S.E.2d 372, 376 (1944)("The jurisdiction of the Court derived from a levy under a warrant of attachment dates from the levy, *but the lien becomes effective to third parties, when certified to the Clerk of Superior Court and indexed in the manner prescribed in the statute.*")(emphasis added).[3]

Here, it is undisputed that the alleged certificate of levy has never been docketed and indexed by the Brunswick County Clerk of Court. Consequently, under the express terms of North Carolina law, no attachment lien arose. Thus, even if Puls can be considered to have a judgment lien, this judgment lien has no attachment lien, enforceable against third parties—such

---

[3] *Voehringer* cites N.C. Gen. Stat. § 1-449, a prior version of Sections 1-440.17 and 1-440.33. The former statute provides, in pertinent part:

> Where the sheriff or other officer levies an attachment upon real estate, he must certify the levy to the clerk of the superior court of the county where the land lies, with the names of the parties, and the clerk must note the same on his judgment docket and index it on the index to judgments, and the levy is a lien only from the date of entry by the clerk, except that if it is so docketed and indexed within five days after being made it is a lien from the time it was made.

17

as SunTrust–to which it may relate back.

Nevertheless, Puls argues that this court should look to N.C. Gen. Stat. § 1-440.9 to "fix"
this "procedural defect" and determine that Puls is entitled to a lien against the real property.
Section 1-440.9 provides:

> The court of proper jurisdiction, *before which any matter is pending under the
> provisions of this Article*, shall have authority to fix and determine all necessary
> procedural details in all instances in which the statute fails to make definite
> provision as to such procedure.

N.C. Gen. Stat. § 1-440.9 (emphasis added). This court does not perceive N.C. Gen. Stat. § 1-
440.9 as authorizing it, after the fact, to articulate alternate procedures for the creation and
attachment of a lien to the subject property. Rather, that appears to be a privilege that would be
enjoyed only by the Mecklenburg County Superior Court, the court before whom "the
matter"–the suit between Puls and Branch and the accompanying ancillary proceeding–was
pending. This court does *not*–and it appears no other superior court in North Carolina, other than
the Mecklenburg County Superior Court in *the original action between Puls and Branch*–have
the power to deem that a lien was created in contravention of the express statutes of North
Carolina.

Moreover, the court does not agree that SunTrust is barred by the doctrines of waiver,
laches, or time limitations from asserting that no attachment lien arose in favor of Puls as to third
parties. Puls contends that SunTrust was obligated to raise the issue of any failure to docket and
index the certificate of levy in the underlying Mecklenburg County proceeding between Puls and
Branch. Citing N.C. Gen. Stat. § 1-440.43[4], Puls contends that SunTrust's only remedy was to

---

[4] Section 1-440.43 provides:
Any person other than the defendant who claims property which has been

make a motion in the Mecklenburg County proceeding, and relies on *Edwards v. Brown's Cabinets*, 63 N.C. App. 524, 305 S.E.2d 765 (1983) as support for this proposition. As SunTrust notes, however, in this case–as opposed to *Edwards*–nothing ever happened that would require an actual attack on the Order of Attachment itself. In *Edwards*, the levy–although procedurally defective–was docketed and indexed as required by the North Carolina General Statutes. Therefore, a lien *attached* to the property subject to an order of attachment, and because a notice of lis pendens already had been filed, the lien related back to the date of the filing of the notice of lis pendens. In this case, as a matter of law there is *no* attachment lien that is enforceable as to third parties because the levy–if it occurred–was not docketed and indexed as required to create an enforceable lien against third parties as provided in N.C. Gen. Stat. § 1-440.33. In this case, unlike *Edwards*, the Order of Attachment does not need to be attacked because, as a matter of law, the failure to docket and index the levy means that the lien did not attach.

Furthermore, as SunTrust notes, the Notice of Lis Pendens, upon which Puls relies to establish the effective date of her lien, is void under plain language of North Carolina law. Under North Carolina General Statute § 1-119, a "notice of lis pendens *is of no avail* unless it is followed . . . by personal service on the defendant within 60 days after the cross-indexing." N.C.

---

attached, or any person who has acquired a lien upon or an interest in such property, whether such lien or interest is acquired prior to or subsequent to the attachment, may

   (1) Apply to the court to have the attachment order dissolved or modified, or to have the bond increased, upon the same conditions and by the same methods that are available to the defendant, or

   (2) Intervene and secure possession of the property in the same manner and under the same conditions as is provided for intervention in claim and delivery proceedings.

N.C. Gen. Stat. § 1-440.43.

19

Gen. Stat. § 1-119(a).  North Carolina General Statute § 1-116.1, in turn, provides that a copy of

a notice of lis pendens shall be served on the other party, and "[i]f filed by the plaintiff at or after

service of summons but before the filing of the complaint, service shall be in the manner

provided as the complaint."  N.C. Gen. Stat. § 1-116.1(2).  Thus, taken together, N.C. Gen. Stat.

§§ 1-116.1(2) and 1-119(a) mean that in this case the Notice of Lis pendens is "of no avail" if it

was not served on Branch within 60 days of the cross-indexing in the manner set forth in Rule 4

of the North Carolina Rules of Civil Procedure.  *See* N.C. R.Civ.P. 4(j)(describing the various

ways to effect service of a summons and complaint under North Carolina law).  By Puls own

admission, she did not effect service in accordance with Rule 4, but rather, Rule 5 of the North

Carolina Rules of Civil Procedure.  Accordingly, under the plain language of the North Carolina

General Statutes, the Notice of Lis Pendens, upon which she relies to establish that an attachment

lien arose, is "of no avail."

 Because no attachment lien arose in favor of Puls, SunTrust is entitled to summary

judgment.

### III. CONCLUSION

 For the foregoing reasons, this court hereby CONSOLIDATES the appeals in the

adversary proceeding, Adversary Proceeding No.07-00074-5-ATS-AP, with the appeal in the

bankruptcy case, Case No. 07-00348-5-ATS.  Moreover, because the breadth of the thoroughness

of the briefs and the record, the Request for Oral Argument [DE-18] by Joan D. Puls is DENIED.

 After a *de novo* review of the facts and conclusions of law, it is hereby ORDERED that:

 (1) this court has jurisdiction over the adversary proceeding, and that neither mandatory

abstention nor permissive abstention is warranted in this action;

(2) no attachment lien arose in favor of Joan D. Puls, and therefore SunTrust is entitled to summary judgment on its claim;

(3) record title to the entire fee simple interest in the property at 41 Richmond Street, Ocean Isle Beach, North Carolina, is vested solely in Cathy Allen Gunter, subject to the valid liens of the Deeds of Trust held by SunTrust Mortgage, Inc., and is not subject to any lien, claim or interest asserted by Joan D. Puls, and

(4) any lien claimed by Joan D. Puls is unenforceable against the property at 41 Richmond Street, Ocean Isle Beach, North Carolina.

SO ORDERED.

This the 20 day of August, 2010.

James C. Fox
Senior United States District Judge